UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BETH A. SMITH,

        **Plaintiff,**

  v.                              **Civil Action 2:20-cv-5473**
                                      **Chief Judge Algenon L. Marbley**
                                      **Magistrate Judge Chelsey M. Vascura**

COMMISSIONER OF SOCIAL
SECURITY,

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Beth A. Smith ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Period of Disability benefits, Disability Insurance benefits, and Supplemental Security Income benefits. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 15), the Commissioner's Memorandum in Opposition (ECF No. 16), and the administrative record (ECF No. 12). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

        **I.**        **BACKGROUND**

Plaintiff filed her applications for Title II Period of Disability and Disability Insurance Benefits and Title XVI Supplemental Security Income Benefits on March 14 and 16, 2017, respectively, alleging that she became disabled effective March 1, 2014. (R. 15.) On June 19, 2019, following administrative denials of Plaintiff's applications initially and on reconsideration, a video hearing was held before Administrative Law Judge Kari Deming (the "ALJ"). (*Id.* 31–

64.) Plaintiff, represented by counsel, appeared and testified. Vocational expert Darren J. Wright (the "VE") also appeared and testified at the hearing. On October 30, 2019, the ALJ issued a decision denying benefits. (*Id.* at 15–25.) On August 12, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. 1–3.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

In her Statement of Errors (ECF No. 15), Plaintiff asserts three contentions of error: (1) the ALJ improperly failed to recognize Plaintiff's radiculopathy as a medically determinable impairment; (2) the ALJ improperly failed to recognize Plaintiff's fibromyalgia as a medically determinable impairment; and (3) the ALJ's residual functional capacity does not sufficiently account for Plaintiff's limitations in concentration, persistence, and pace as opined by the state agency psychologists. (*Id.* at 5–14.)

## II.     THE ALJ'S DECISION

On October 30, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 15–25.) At step one of the sequential

evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of March 1, 2014. (*Id.* at 17.) At step two, the ALJ found that Plaintiff has the severe impairments of chronic fatigue syndrome; joint dysfunction (bilateral hips and knees); neuropathic pain syndrome; obesity; obstructive sleep apnea (mild); spine disorder; anxiety; and depression. (*Id.*) She further found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 18.)

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following additional limitations:

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

3

- Occasionally stoop, but never crouch, crawl, kneel, or climb;

- Never be exposed to workplace hazards (such as ropes, ladders, scaffolds, unprotected heights, moving mechanical parts, or hazardous machinery);

- Never be exposed to groups of more than 10 people at a time;

- Engage in occasional interaction with supervisors and co-workers, but no more than brief, superficial contact, such as passing in the hall, with the public.

- Engage in simple duties, defined as those that can be learned within 30 days, and that require little or no judgment to perform; and

- Engage in predictable work activity, defined as that with only occasional changes in the work setting or general nature of the tasks performed; [and]

- Engage in no production-paced tasks, such as assembly line or fast food work[.]

(*Id.* at 19.)

At step five of the sequential process, relying on the VE's testimony, the ALJ found that Plaintiff was unable to perform any past relevant work, but that there were jobs that existed in significant numbers in the national economy that she could perform, such as ink printer, label pinker, or hand mounter. (*Id.* at 24.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.* at 25.)

### III.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

As set forth above, Plaintiff asserts three contentions of error: (1) the ALJ improperly failed to recognize Plaintiff's radiculopathy as a medically determinable impairment; (2) the ALJ improperly failed to recognize Plaintiff's fibromyalgia as a medically determinable impairment; and (3) the ALJ's residual functional capacity does not sufficiently account for Plaintiff's limitations in concentration, persistence, and pace as opined by the state agency psychologists. (Pl.'s Statement of Errors 5–14, ECF No. 15.) The undersigned considers each contention of error in turn.

**A.     The ALJ did not err in not finding Plaintiff's radiculopathy to be a medically determinable impairment.**

Plaintiff asserts that the ALJ erred by failing to consider her radiculopathy as a medically determinable impairment when crafting Plaintiff's RFC.  At step two of the sequential evaluation process, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012).  The United States Court of Appeals for the Sixth Circuit has construed a claimant's burden at step two as "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).  The inquiry is therefore "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id*. at 863 (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985)).

However, where the ALJ determines that a claimant has a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003).  Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in the RFC assessment); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

Here, Plaintiff argues that not only did the ALJ fail to find that her radiculopathy was a severe impairment, the ALJ also failed to find that her radiculopathy was a medically determinable impairment at all, and therefore did not consider the limiting effects of Plaintiff's radiculopathy in crafting the RFC.  (Pl.'s Statement of Errors 6–7, ECF No. 15.)  Although Plaintiff is correct that the ALJ did not mention her radiculopathy by name, Plaintiff also failed to identify radiculopathy as an impairment in her application materials or at the hearing.  Although Plaintiff cites medical records documenting a diagnosis of radiculopathy (*e.g.*, R. 616), "[t]he mere diagnosis . . ., of course, says nothing about the severity of the condition."  *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988).  And Plaintiff has not identified any evidence that her radiculopathy, separate and apart from the other impairments recognized by the ALJ, limits her functioning in any way.

Additionally, the ALJ did discuss, and credit, Plaintiff's self-described "severe back pain that starts in her neck and travels into her arms and down into her feet" when explaining the basis for the RFC.  (R. 20–21.)  To account for this and other impairments, the ALJ limited Plaintiff to standing and walking no more than two hours of an eight-hour workday, lifting and carrying no more than 10 pounds occasionally, occasional stooping, and no crouching, kneeling, or climbing.  (*Id.* at 21.)  Plaintiff does not identify any further limitations that she requires as a result of her radiculopathy.  Moreover, it is Plaintiff's burden at steps one through four of the sequential evaluation process to provide evidence of her impairments.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).  Because Plaintiff has not done so with regard to her radiculopathy, the undersigned finds no error by the ALJ in not recognizing Plaintiff's radiculopathy as a medically determinable impairment.

7

**B.        The ALJ did not err in not finding Plaintiff's fibromyalgia to be a medically determinable impairment.**

Plaintiff similarly takes issue with the ALJ's express determination that Plaintiff's alleged fibromyalgia did not rise to the level of a medically determinable impairment. (Pl.'s Statement of Errors 7–10, ECF No. 15.) Social Security Ruling 12-2p sets forth criteria that a claimant must meet to demonstrate a medically determinable impairment of fibromyalgia:

> II.   * * * We will find that a person has an MDI [medically determinable impairment] of FM [fibromyalgia] if the physician diagnosed FM and provides the evidence we describe in section II.A. or section II. B., and the physician's diagnosis is not inconsistent with the other evidence in the person's case record.
>
> * * *
>
> A. The 1990 ACR Criteria for the Classification of Fibromyalgia. Based on these criteria, we may find that a person has an MDI of FM if he or she has all three of the following:
>
> 1. A history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months. The pain may fluctuate in intensity and may not always be present.
>
> 2. At least 11 positive tender points on physical examination . . . . The positive tender points must be found bilaterally (on the left and right sides of the body) and both above and below the waist.
>
> * * *
>
> 3. Evidence that other disorders that could cause the symptoms or signs were excluded. Other physical and mental disorders may have symptoms or signs that are the same or similar to those resulting from FM. Therefore, it is common in cases involving FM to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs. Laboratory testing may include imaging and other laboratory tests (for example, complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor).
>
> B. The 2010 ACR Preliminary Diagnostic Criteria. Based on these criteria, we may find that a person has an MDI of FM if he or she has all three of the following criteria:

> 1. A history of widespread pain (see section II.A.1.);
>
> 2. Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and
>
> 3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded (see section II.A.3.).

Soc. Sec. Ruling, SSR 12-2p; Titles II & XVI: Evaluation of Fibromyalgia, 2012 WL 3104869 at *2–3 (S.S.A. July 25, 2012).  Here, the ALJ determined that the criteria of SSR 12-2p were not met:

> Fibromyalgia and myositis are not medically determined on this record.  While the claimant has been seen by a rheumatologist on two occasions (August 2016 and February 2017), the rheumatologist simply notes that the claimant meets the criteria for a "neuropathic pain syndrome" *such as fibromyalgia* (9F/4, 19F/3).  Notably, the claimant's physical examination findings on both occasions were wholly unremarkable (9F/3, 8).  Therefore, not only does this record lack a definitive diagnosis of fibromyalgia, it further lacks the requisite fibromyalgia criteria both under the 1990 criteria and the 2010 criteria as set by the American College of Rheumatology (ACR) (See also SSR 12-2).  Nevertheless, I have considered the claimant's neuropathic pain syndrome in assessing her residual functional capacity.

(R. 20, n.1 (emphasis in original).)

Plaintiff disputes the ALJ's finding that she does not meet the SSR 12-2p criteria. Plaintiff asserts that Dr. Irving Rosenberg, rheumatologist, "diagnosed [Plaintiff] with fibromyalgia and noting that she meets the neuropathic pain syndrome and suffers from poor sleep, diffuse pain, sensitivity, depression, and anxiety."  (Pl.'s Statement of Errors 9, ECF No. 15, citing R. 1017.)  However, Dr. Rosenberg actually stated, "Fibromyalgia: Difficult to dx [diagnose] at this time as she is actively depressed" and that Plaintiff "meets diagnostic criteria for a neuropathic pain syndrome *such as* fibromyalgia."  (R. 1017 (emphasis added).)  Thus, the ALJ correctly noted that the "record lack[s] a definitive diagnosis of fibromyalgia," but went on to consider any impairments resulting from a neuropathic pain syndrome.  (R. 20, n.1.)  And

9

even if Dr. Irving *had* diagnosed Plaintiff with fibromyalgia, the ALJ "cannot rely upon the physician's diagnosis alone." SSR 12-2p, 2012 WL 3104869 at *2. Plaintiff must also meet the criteria of either Section II.A or II.B. *Id.* Plaintiff asserts that she meets the criteria of section II.B because she has a history of widespread pain and six or more fibromyalgia symptoms, signs, or co-occurring conditions. (Pl.'s Statement of Errors 8, ECF No. 15.) However, she makes no argument or showing as to the third criterion of section II.B: "evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." SSR 12-2p, 2012 WL 3104869 at *3. In fact, the ALJ noted that Plaintiff testified at the hearing that she "is unable to distinguish between her back pain and her symptoms of fibromyalgia." (R. 20.) Again, it is Plaintiff's burden to provide evidence of her impairments. Because Plaintiff failed to identify evidence that she meets all of the criteria of SSR 12-2p, the ALJ did not err in determining that Plaintiff did not have a medically determinable impairment of fibromyalgia.

**C.      The ALJ's residual functional capacity is supported by substantial evidence.**

The determination of a claimant's RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). The Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole. 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i) (incorporating § 423(d) for Title XVI). Consistently, Social Security Ruling 96-8p instructs that the ALJ's RFC assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work. SSR 96-8P, 1996 WL

10

374184 (July 2, 1996).  An ALJ must explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (internal footnote omitted).

Here, Plaintiff contends that the ALJ did not sufficiently account for her limitations in concentration, persistence, and pace when crafting Plaintiff's RFC.  (Pl.'s Statement of Errors 12, ECF No. 15.)  Specifically, Plaintiff asserts that the ALJ failed to include all limitations opined by two state agency psychologists, even though the ALJ afforded the reviewers significant weight.  (*Id.*)  The undersigned disagrees.

The state agency psychologists found that Plaintiff has moderate limitations in concentration, persistence, or maintaining pace; specifically, Plaintiff was moderately limited in "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (R. 173, 177–78, 188, 192–93).  However, the state agency psychologists found that Plaintiff was not significantly limited, or not limited at all, in the remaining abilities falling under the concentration, persistence, and pace area of mental functioning. (R. 177, 192)  Further, the state agency psychologists explained in narrative form that Plaintiff "can sustain tasks in a static setting with no requirements for consistent fast pace and no productivity requirements." (R. 178, 193.)  Finally, the state agency psychologists found

11

that Plaintiff was moderately limited in "[t]he ability to respond appropriately to changes in the work setting," which falls under the adapting and managing oneself area of mental functioning. (*Id.*)

The ALJ briefly discussed the state agency psychologists' opinions, affording them significant weight:

> As for the opinion evidence, I afford significant weight to the state agency mental health assessments (1A, 6A). The mental health consultants, both clinical psychologists, reasonably note that the record does not support marked or extreme mental health symptoms/limitations. Such assessment is wholly consistent with this record, as discussed herein.

(R. 23.) The ALJ similarly concluded that Plaintiff was moderately limited in the areas of concentrating, persisting, or maintaining pace, adapting or managing oneself, and interacting with others. (R. 18.) In explaining Plaintiff's RFC, the ALJ discussed Plaintiff's moderate mental limitations as follows:

> Lastly, the claimant has some moderate mental health limitations associated with depression and anxiety. The above-assessed residual functional capacity accounts for such by limiting her exposure to others in the workplace, and, as with fatigue, she is limited to simple work duties of a predictable nature in a non-production-paced environment.

(R. 22.) The RFC ultimately included the following mental health limitations:

- Never be exposed to groups of more than 10 people at a time;

- Engage in occasional interaction with supervisors and co-workers, but no more than brief, superficial contact, such as passing in the hall, with the public.

- Engage in simple duties, defined as those that can be learned within 30 days, and that require little or no judgment to perform; and

- Engage in predictable work activity, defined as that with only occasional changes in the work setting or general nature of the tasks performed; [and]

- Engage in no production-paced tasks, such as assembly line or fast food work[.]

12

(R. 19.) The undersigned finds that the ALJ's RFC is supported by the substantial evidence of the state agency psychologists' opinions and accounts for all of their opined limitations. The limitation of a "static task setting" is accommodated by requiring that Plaintiff "[e]ngage in predictable work activity, defined as that with only occasional changes in the work setting or general nature of the tasks performed"; and the limitations of "no requirements for consistent fast pace and no productivity requirements" are accommodated by requiring that Plaintiff "[e]ngage in no production-paced tasks, such as assembly line or fast food work." The ALJ's use of somewhat different language than the state agency psychologists to account for the same limitations is not grounds for reversal. "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). And although Plaintiff contends that "the ALJ failed to acknowledge that [Plaintiff] may be unable to stay alert, or work at a consistent pace, even at a simple, unskilled, routine job" (Pl.'s Statement of Errors 13, ECF No. 15), the state agency psychologists did not opine as much. To the contrary, they opined that Plaintiff "*can sustain* tasks in a static setting with no requirements for consistent fast pace and no productivity requirements." (R. 178, 193 (emphasis added).) Nor does Plaintiff identify any other evidence in support of an inability "to stay alert, or work at a consistent pace, even at a simple, unskilled, routine job." Accordingly, the undersigned finds the ALJ's RFC is supported by substantial evidence.

## V. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is

**RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE
